**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ANTOINE JOHNSON                                    CIVIL ACTION

VERSUS                                                      No. 11-1382

WARDEN LYNN COOPER                          SECTION "G" (6)


**<u>ORDER AND REASONS</u>**

Before the Court is Petitioner Antoine Johnson's request for an issuance of a writ of habeas corpus under 28 U.S.C. § 2254.[1] This matter came before the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) from which the magistrate judge issued a report and recommendation on November 2, 2011.[2] The magistrate judge found no merit in Petitioner's claims and recommended that the matter be dismissed with prejudice.[3] On December 7, 2011 petitioner filed timely objections to the magistrate's report and recommendation where he reasserts and details arguments from the writ application.[4] Petitioner requests a full evidentiary hearing regarding the application for a writ of habeas corpus.[5] After reviewing the petition, the magistrate judge's Report and Recommendation, the objections, the record, and the applicable law, the Court will adopt the magistrate judge's recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 3

[2] Rec. Doc. 1 at p. 2.

[3] *Id.*

[4] Rec. Doc. 14 at 2.

[5] *Id.* at 7.

1

## I. Background

### A. Factual Background

On July 26, 2003 three men fired upon Sam Davis and Michael Martin with "long-barreled assault weapons" at a carwash.[6] The victims did not know the suspects or the reason for the shooting.[7] The New Orleans Police Department ("NOPD") discovered a firearm near the carwash and traced it to Paul Pierce, who identified two of the suspects from the surveillance video. Mr. Pierce identified Kendal Washington and Elton Hooks, but was not able to identify the third perpetrator.[8]

During the investigation, the United States Attorney's Office met with James Aldridge, who was in federal custody on drug and weapon charges.[9] Mr. Aldridge testified that he knew the suspects and saw them daily up until his arrest.[10] Mr. Aldridge identified all three suspects in the video including the third, Petitioner Johnson.[11] Subsequently, NOPD arrested Hooks, Washington and Johnson.[12] Hooks admitted his participation in the shooting and implicated Washington as well.[13]

At trial, Mr. Aldridge invoked his Fifth Amendment right against self-incrimination and did

---

[6] Rec. Doc. 11 at 4.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.* at 8.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

not testify.[14] Therefore the trial court declared him "unavailable."[15] Mr. Aldridge did however provide testimony at a pre-trial hearing and was available to Petitioner's attorney for cross-examination at that time.[16] A law clerk read the transcript from this testimony into the record at trial.[17] In addition to identifying Washington, Hooks, and Petitioner,  Mr. Aldridge testified that he was a close friend of Petitioner, that Petitioner informed him of a plan to kill members of a gang responsible for the death of LaDevin Pierce, and that later Petitioner told him that he participated in the carwash shooting in which he shot the wrong people.[18] Mr. Aldridge also identified Petitioner in the surveillance footage by his clothing, which Mr. Aldridge claimed he had purchased for Petitioner.[19] Mr. Aldridge pled guilty before meeting with any government agent, and prior to his testimony at the pretrial hearing about the carwash shooting, but he acknowledged that he was testifying in hopes that his cooperation would lessen his sentence.[20]

On November 28, 2007, the jury found Petitioner guilty of two counts of attempted second-degree murder, under La. R.S. 14:30.1, and the trial court sentenced Petitioner to twenty years, with credit for time served.[21] After a series of appeals, on February 10, 2010, the Louisiana Fourth Circuit

---

[14] *Id.* at 9.

[15] *Id.*

[16] Rec. Doc. 14 at 4.

[17] *Id.*

[18] Rec. Doc. 11 at 9.

[19] *Id.* at 10.

[20] *Id.* at 9-10.

[21] *Id.* at 3

Court of Appeal affirmed Petitioner's convictions and sentences.[22] The Louisiana Supreme Court also denied Petitioner's writ application. Subsequently, Petitioner filed this habeas corpus petition in this Court.

**B. Report and Recommendation Findings**

In review of this habeas corpus petition, the magistrate judge applied the 28 U.S.C. § 2254(d)(1) revised standards of review for questions of law and mixed questions of law and fact, which require federal courts to defer to the state court's decision unless it was "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."[23] Using this standard, the magistrate judge assessed Petitioner's claims that: 1) the evidence was insufficient to support his conviction; 2) he was denied his right to confront and cross-examine his accuser, James Aldridge at trial; 3) the jury was guilty of misconduct by virtue of their viewing, during deliberations, enhanced footage of the surveillance videotape of the shooting; and, 4) he was denied full appellate review because the voir dire transcript he received did not include bench conferences.[24]

The magistrate judge found that Petitioner's contention that there was insufficient evidence to support his conviction was without merit.[25] Petitioner based this claim on the fact that there were no eye-witnesses to the shooting and the case relied upon the testimony of Mr. Aldridge, a convicted felon. After a review of the findings of the Louisiana Fourth Circuit Court of Appeal, including the

---

[22] *Id.*

[23] *Id.* at 19.

[24] *Id.*

[25] *Id.* at 13.

facts alleged in Mr. Aldridge's testimony, the magistrate judge concluded that there was no unreasonable application of law, and therefore Petitioner's Sixth Amendment rights were not violated.

The magistrate judge also rejected Petitioner's claim that he was denied his Sixth Amendment right to confront and cross-examine his accuser when the trial court declared Mr. Aldridge unavailable for trial, but permitted his prior testimony at the pretrial hearing to be read into the record.[26] Relying on Supreme Court precedent, the magistrate judge found that admission of testimony from absent witnesses does not violate the Sixth Amendment when: 1) the witness is unavailable; and 2) the defendant has had prior opportunity to cross-examine the witness.[27] Applying that standard, the magistrate judge found that the invocation of the Fifth Amendment makes a witness unavailable[28] and that the Petitioner had an opportunity to cross-examine Aldridge during the pre-trial hearing testimony.[29]

Regarding Petitioner's allegation that his conviction was tainted by jury misconduct because of their use of "extrinsic evidence," the magistrate judge examined the testimony that the Louisiana Fourth Circuit Court of Appeal used to determine that there was no jury misconduct.[30] Specifically, the magistrate judge examined the record, including testimony of Deputy Patricia Bruno and Deputy Sheriff Donald Marshall, which supported the conclusion that although the jurors did view footage on

---

[26] *Id*.

[27] *Id*. at 17 (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).

[28] *Id*. (citing *Jackson v. Mississippi Dept. Of Corrections*, 359 F. App'x 499, 502 (5th Cir. 2010)).

[29] *Id*. (citing *State v. Johnson*, 2008-1488 (La. App. 4 Cir. 2/10/10); 33 So.3d 328).

[30] *Id*. at 19.

a juror's laptop, the deputies were not aware of any enhancement software that enabled jurors to view

anything more than what was introduced in court.[31] Further, the defense counsel was aware that the

jury was going to view the videotape on a juror's laptop computer and did not file an objection, but

made a motion for a new trial after the verdict.[32] Given that testimony, the magistrate judge did not find

that the state appellate court unreasonably applied Supreme Court precedent governing extrinsic

influence, and found no merit in Petitioner's claim.[33]

Finally, the magistrate judge rejected Petitioner's argument that his conviction should be

reversed according to Louisiana law, because he was not provided a transcript of the voir dire

proceedings that included bench conferences.[34] The magistrate judge cited Supreme Court precedent

which holds that habeas corpus relief must be based in federal, not state law.[35] Further, the magistrate

concluded that the State is only required to supply a complete transcript when it is alleged that a

specific error may be uncovered through its production, and is not required to provide transcripts for

defendants conducting "fishing expeditions" to seek out possible errors at trial.[36] Because Petitioner

did not allege a particular constitutional error that could be uncovered in the transcript, the magistrate

---

[31] *Id*. (determining that jurors paused video which was properly admitted into the record)

[32] *Id*.

[33] *Id*. at 20 (citing *Tanner v. United States*, 483 U.S. 107, 120 (1987) ("The Supreme Court has determined that an evidentiary hearing is warranted when 'extrinsic influence' or relationships have tainted [jury] deliberations"); *Garcia v. Andrews*, 488 F.3d 370, 375 (6th Cir. 2007)) .

[34] *Id*.

[35] *Id*. (citing *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir. 1998)).

[36] *Id.* (citing *Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003)).

judge found no reason to grant the application on this claim.[37]

## II. Objections

Petitioner objects to each of the findings of the magistrate judge regarding Petitioner's claims that he is entitled to relief due to alleged constitutional violations that led to his attempted murder conviction, and he requests a full evidentiary hearing on the petition.[38] Petitioner elaborates on facts and law that he claims support his contentions that: 1) the conviction is based on insufficient evidence; 2) he was denied the opportunity to confront his accuser; 3) there was juror misconduct, and 4) he was deprived of his right to a complete voir dire transcript of the proceedings.[39] In consideration of these arguments Petitioner asks that the complaint not be dismissed.

Regarding his claim that there was insufficient evidence for conviction, Petitioner characterizes the viewing of the surveillance footage on a juror's laptop as extrinsic evidence and argues that the testimony of Mr. Aldridge was hearsay. Petitioner asserts that when the trial court allowed the jury to view video evidence on a juror's laptop, the laptop revealed images that were not presented at trial. Petitioner argues that, without the inclusion of what he calls extrinsic evidence and the alleged hearsay testimony of Mr. Aldridge, there would be no evidence upon which the jury could have reached a conviction.[40]

---

[37] *Id*. at 22 ("The fact that the Petitioner believes that he may have uncovered a constitutional error if he had been provided with a transcript of the bench conferences is clearly insufficient for the purpose of attaining federal habeas corpus relief.")

[38] Rec. Doc. 14 at 7.

[39] *Id*. at 2.

[40] *Id*. at 4.

7

Regarding his claim that he was denied his Sixth Amendment right to confront Mr. Aldridge, Petitioner argues that the Louisiana Fourth Circuit Court of Appeal erred in allowing Aldridge to assert Fifth Amendment protections and testify at a pretrial hearing instead of ordering him to testify at trial.[41] Petitioner cites Louisiana Supreme Court precedent that he claims suggests that a witnesses may only invoke the Fifth Amendment if "injurious disclosure would result," and that even then the court should limit a person's exercise of this right in response to specific questions [42]

Petitioner disputes the magistrate judge's finding that there is no evidence that the jury viewed the enhanced or altered images from the video with video enhancing software.[43] Petitioner points to the testimony of Deputy Patricia Bruno, who testified that she was told by jurors that they used the laptop to "enhance images of the disk" enabling them to see images in a way that the State did not present them at trial.[44] Petitioner also highlights that Bruno told the Assistant District Attorney that jurors had changed their vote in favor of guilty after viewing the disc on the juror's laptop and that when defense counsel learned about the juror misconduct he filed a motion for a new trial.[45]

Finally, on Petitioner's claim that he was afforded incomplete appellate review, Petitioner argues that the missing bench conference transcripts are the only way to prove whether the trial court ruled correctly on the challenges.[46] Petitioner cites Louisiana Supreme Court precedent where the court

---

[41] *Id.* at 5 (citing *State v. Wilson*, 394 So. 2d 254 (La. 1981)).

[42] *Id.*

[43] *Id.* at 6.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 7

8

overturned a conviction due to missing bench conferences.[47] Based on these allegations of errors and constitutional deprivation, Petitioner requests a full evidentiary-hearing on the propriety of his conviction.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).[48]

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court."[49] The Supreme Court has made a distinction between the application of the "contrary to" and "unreasonable application" clauses, stating that a federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule in a way that is inconsistent with governing law and Supreme Court precedent on identical facts and it may issue the writ under the "unreasonable application" clause if the state court unreasonably

---

[47] *Id.* (citing *State v. Pinion*, 06-2346, p. 8 (La. 10/26/07); 968 So. 2d 131, 135).

[48] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[49] 28 U.S.C. § 2254(d)(1).

applies the governing law to the facts of the case.[50] Further, the Supreme Court has noted that, "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable and we stressed in *Williams* that an unreasonable application is different from an incorrect one."[51]

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[52]

### IV. Analysis

#### A. Insufficient Evidence

Petitioner objects to the finding that there was sufficient evidence to support his conviction by reasserting his claims that the jury used extrinsic evidence and that the testimony from Mr. Aldridge is hearsay.

The standard for an insufficiency of evidence claim is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[53] Under this standard, the trier of fact may resolve conflicts in the testimony, weigh evidence, and draw reasonable inferences.[54] Further, "all credibility

---

[50] *See Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403–404, (2000)).

[51] *Id.*

[52] 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485.

[53] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[54] *Id.*

choices and conflicting inferences are to be resolved in favor of the verdict."[55]

The trial jury and the Louisiana Fourth Circuit Court of Appeal, in reviewing the evidence, considered the testimony of Mr. Aldridge. The magistrate reviewed the record (including the testimony of Mr. Aldridge that he and Petitioner spoke on a daily basis and that Petitioner told him of his intent to kill the person he believed was responsible for Mr. Pierce's death before the shooting) and made the determination that the evidence was sufficient for a rational trier of fact to reach a conviction.

Petitioner's objection does not offer any new evidence to challenge that determination. Rather, Petitioner pivots to a new allegation that the jury was tainted by extrinsic evidence from viewing surveillance footage that was admitted at trial on a juror's laptop. The Fifth Circuit has stated that claims brought up in an objection that a petitioner did not raise until after the magistrate court issued findings and recommendations are not to be considered and are waived.[56] Petitioner did not raise this issue in the petition and raises it for the first time in the objection to the magistrates findings. Thus, Petitioner is not entitled to review on this claim, but only the claims addressed in his petition. Petitioner's other allegations regarding the jury's viewing of surveillance footage are addressed below.

### B. Right to Confront Witnesses

Petitioner objects to the magistrate judge's finding that he had an opportunity to confront his accuser because the witness, Mr. Aldridge, although, he was unavailable for trial, was cross-examined

---

[55] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("A determination of a factual issue made by a State court shall be presumed correct," and the Petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

[56] *See Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) (rejecting arguments submitted after the magistrate report was issued); *Long v. McCotter*, 792 F.2d 1338, 1345 (5th Cir. 1986) ("we ordinarily do not consider issues that have not been presented to the court of first instance").

by attorneys for Petitioner at the pretrial hearing. Petitioner alleges that the Louisiana court of appeal upheld his conviction based on inadmissible hearsay testimony from Mr. Aldridge, who should have been forced to testify at trial instead of simply allowing his pretrial testimony to be read into the record.

Petitioner relies upon Louisiana Supreme Court precedent to support his claim that Mr. Aldridge should not have been declared unavailable and should have been forced to testify at trial on a question by question basis. However, it is well established that federal habeas review is limited to questions of a constitutional dimension and is grounded in federal law *as interpreted by the United States Supreme Court.*[57]

In *Crawford v. Washington*, the Supreme Court recognized its long standing precedent that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."[58] The Supreme Court has noted that the Fifth Amendment protects a witnesses in any proceeding where answers might incriminate him in future criminal proceedings regardless of the nature of that proceeding or the witness's role in it.[59] In addition, the Supreme Court has stated that the privilege

---

[57] *See Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) ("But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts"); *see also Williams*, 529 U.S. at 402-03.

[58] 541 U.S. at 59.

[59] *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) ("the privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used." (quoting *McCarthy v. Arndstein*, 266 U.S. 34 (1924))).

protects the witness as fully as it does the accused.[60] Granting the privilege is at the discretion of the trial judge.[61]

Also, the Supreme Court has clarified that the hearsay rule does not apply where the witness is unavailable due to his invocation of the Fifth Amendment privilege, as long as the witness gave testimony at a hearing in which there was an opportunity for cross-examination.[62] In fact, the Fifth Circuit has recently acknowledged that a trial court did not err in allowing an alibi witness to invoke the Fifth Amendment at trial, and therein used her prior sworn statement to be admitted into evidence.[63]

Here, Mr. Aldridge was awaiting sentencing for federal gun and weapons charges, and testified that he was subject to other charges when he invoked Fifth Amendment protections at trial, and was therefore declared unavailable by the trial court.[64] In the pretrial motion hearing, Mr. Aldridge stated that he was in daily contact with gang members and dealt drugs for a living and that he was aware of Petitioner's intent to kill before the carwash shooting.[65] Under cross-examination, Robert Jenkins, Petitioner's defense attorney, suggested to Mr. Aldridge that his responses may subject him

---

[60] *Id.*

[61] *See Hoffman v. United States,* 341 U.S. 479, 486 (1951) ("to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked"); *Jackson*, 359 Fed. Appx. at 501.

[62] *See  United States v. Salerno*, 505 U.S. 317, 321 (1992).

[63] *See  Jackson v. Mississippi Dept. Of Corrections*, 359 F. App'x 499, 501 (5th Cir. 2010).

[64] *See Johnson*, 33 So. 3d at 336-37 (recounting the circumstances under which Mr. Aldridge invoked the Fifth Amendment).

[65] *Id.*

to further prosecution.[66] Under such circumstances, the state court did not unreasonably apply federal law in declaring Mr. Aldridge unavailable. Petitioner concedes that there was an opportunity to cross-examine the witness at the pretrial hearing in which Mr. Aldridge gave testimony,[67] and because he was reasonably declared unavailable in accordance with United States Supreme Court precedent, this Court agrees that his testimony was properly admitted.

### C. Juror Misconduct

Petitioner claims that when the trial court allowed the jury to view the evidence in a manner that it was not presented at trial therefore constituting extrinsic evidence. According to Petitioner, the testimony of Deputy Bruno in which she states that a juror told her that they used the laptop to "enhance images on the disk" supports this claim. Petitioner also relies on Louisiana law to bolster the argument that there was juror misconduct. However, as previously stated, federal habeas review may only consider federal law as interpreted by the United States Supreme Court.

In addressing a juror misconduct claim the Supreme Court has stated, "in a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties."[68] In addition, the Supreme Court has noted that "the requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to

---

[66] *Id.*

[67] *See* Rec. Doc. 14 at p. 4 ("Petitioner concedes, defense counsel did in fact have an opportunity to cross-examine Mr. Aldridge at the pretrial motion.").

[68] *See Remmer v. United States*, 347 U.S. 227, 229 (1954).

the fundamental integrity of all that is embraced in the constitutional concept of trial by jury."[69]

The state district court conducted an evidentiary hearing to address Petitioner's jury misconduct claim. According to the state appellate court, the circumstances under which jurors viewed the video were as follows:

> As the jury deliberated, it requested to view again the surveillance video of the shooting incident. Because of the possibility of prejudicial information in the state's computer, the jury was offered a computer belonging to one of the deputies; however, that computer malfunctioned. The jury viewed the video on a juror's laptop computer. After deliberating, one of the jurors told Deputy Bruno that they viewed the video frame by frame and could clearly see Mr. Johnson's face. Another juror told Deputy Bruno that the state did not do a good job on the case.  The juror indicated that during the trial, the state should have shown still shots of the video frame by frame as they had seen it during deliberations. Under cross-examination, Deputy Bruno stated that she did not see the video during deliberations  and that she did not know whether the juror's laptop contained frame by frame enhancing software or whether the images shown were altered in any manner. Deputy Bruno also stated that Deputy Marshall informed the judge, the district attorneys, and defense counsel that the jury was going to view the surveillance video on a juror's laptop computer.[70]

Here, according to testimony from Deputy Marshall, the video was admitted as evidence at trial and viewed under court supervision, with knowledge of the court and without objection from the defense.[71] Because the video footage that was viewed during deliberation was admitted as evidence, when jurors viewed the evidence on a laptop they did not infringe on Petitioner's right to a fair trial.

Deputy Bruno's testimony only suggests that juror's paused the video at certain points to get a better look at images that were already part of the record. Deputy Bruno's testimony in which she suggests that jurors changed their votes to "guilty" after viewing the images on a laptop does not

---

[69] *See Turner v. State of Louisiana*, 379 U.S. 466, 471-72 (1965).

[70] *Johnson*, 33 So. 3d at 337-38.

[71]  *See id.* at 338.

provide conclusive evidence that there was juror misconduct. Thus, Petitioner has not presented any compelling evidence to show that the jury accessed extrinsic evidence by viewing the video on a jurors laptop during deliberation. Considering the evidence presented in state court, it is not an unreasonable determination of the facts for the state court to conclude that there was no juror misconduct.

### D. Incomplete Transcript of Voir Dire

Petitioner claims that his conviction should be reversed because he was not provided bench conference transcripts from the voir dire, which he alleges is vital to his appeal. Petitioner cites Louisiana state court precedents to suggest his claim provides grounds for reversal. As previously discussed, federal habeas review may only consider constitutional violations and noncompliance with federal law as interpreted by the United States Supreme Court.[72]

The Supreme Court has rejected the argument that the State must provide a full transcript whenever a defendant requests one.[73] Rather, the Supreme Court has noted that, a state is not required to provide parts of the transcript that are not "germane to consideration of the appeal."[74] In interpreting this standard, the Fifth Circuit has held that when a defendant has not alleged a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record, the state is not required to provide complete transcripts for defendants to conduct "fishing expeditions" to seek out possible errors at trial.[75]

---

[72] *See Wilson*, 131 S.Ct. at 16.

[73] *See Draper v. State of Washington*, 372 U.S. 487, 495-96 (1963); *See also Kunkle*, 352 F.3d at 985-86 ("this Court specifically rejected the idea that a state must provide a complete transcript for purposes of a mere "fishing expedition.").

[74] *See Draper*, 372 U.S. at 495.

[75] *See Kunkle*, 352 F.3d at 985-86.

16

Here, Petitioner claims that a complete transcript was not provided for him so that he could find potential claims to launch in this appeal. Petitioner points to no particular ruling in the voir dire that he wishes to appeal, only that the transcript is his only means to assess whether the court ruled correctly on the challenge. Without a specific issue or ruling that is contained in the bench transcript to appeal, his claim lacks a relevant issue that would trigger a duty upon the State to provide him the transcript. Therefore, the state court's determination that there were no constitutional violations regarding providing the transcript is not an unreasonable application of federal law.

Again, Petitioner has only argued that he was denied full appellate review because he has not been provided with a transcript of bench conferences during voir dire, when the attorneys exercised their peremptory and challenges for cause.[76] While Petitioner has not framed this challenge as an argument that he was deprived of his Sixth Amendment Right to be present at all critical stages of the trial, even if this Court were to liberally construe this challenge as such a claim, the result here would be no different.

The Fifth Circuit has specifically identified the jury selection process as a stage where the defendant has a constitutional right to be present, because it is a stage at which the defendant can provide meaningful assistance to counsel.[77] However, if such an alleged deprivation is not raised at trial, it is only subject to plain error review.[78] There is nothing in the record to suggest that the trial court expressly excluded Petitioner from these bench conferences or that Petitioner or his attorney

---

[76] Rec. Doc. 3 at p. 36.

[77] *United States v. Alikpo*, 944 F.2d 206, 210 (5th Cir. 1991).

[78] *United States v. Curtis*, 635 F.3d 704, 714 (5th Cir. 2011).

17

made any objection to such a ruling. To establish plain error (1) there must be "some deviation from a legal rule" that has not been waived by the defendant; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute;" and (3) the error must have affected the defendant's substantial rights, i.e., it "affected the outcome of the district court proceedings."[79] Recently, in *United States v. Thomas*,[80] the Fifth Circuit  rejected the argument that a defendant's "absence during jury impanelment constituted structural error, such that it is reversible per se, without a showing of prejudice to the defendant."[81] Rather, the defendant must make a showing of prejudice because of his absence from the jury selection process.[82]

However, here, Petitioner has not alleged that he was excluded from jury selection. Nevertheless, generously construing the nature of Petitioner's contentions, Petitioner may argue that he did not participate in the bench conferences for which he now requests a voir dire script. In *United States v. Curtis*,[83] the defendant asserted that the district court committed plain error by allowing his attorney to exercise his peremptory challenges in his absence.[84] However, the Fifth Circuit rejected this argument and affirmed the district court, because the defendant was present for counsel's exercise of challenges for cause, the court's allocation of peremptory challenges to the two sides, and when the peremptory challenges were given formal effect; therefore, the Fifth Circuit held that no error was

---

[79] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[80] – F.3d –, No. 12-60707, 2013 WL 3949001 (5th Cir. Aug. 1, 2013).

[81] *Id.* at *3 (citing *Rushen v. Spain*, 464 U.S. 114, 117-21 (1983)).

[82] *Id.*

[83] 635 F.3d 704.

[84] *Id.* at 714.

committed.[85] Further, in *Thomas*, the Fifth Circuit acknowledged that "'if a defendant is given an opportunity to register his opinions with counsel after juror questioning and *is present when the exercise of strikes is given formal effect, then his constitutional right to be present is satisfied*.'"[86]

Here, Petitioner makes no claim that he was not present during voir dire, and there is reason to believe that he was unable to communicate with his attorney throughout. Therefore, even if he did not participate in these bench conferences, because the court did not improperly exclude him, his right to be present was not violated. As such, without articulating specific alleged errors during these bench conferences, Petitioner is not entitled to these transcripts.[87]

## V. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation and Petitioner Johnson's petition[88] is **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  27th  day of August, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[85] *Id.*; *see also Thomas*, 2013 WL 3949001, at *5 (discussing *Curtis*).

[86] 2013 WL 3949001, at *5 (quoting *Cohen v. Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002)) (emphasis added in *Thomas*).

[87] *See Kunkle*, 352 F.3d at 985-86.

[88] Rec. Doc. 3.